UNITED STATES OF AMERICA
DISTRICT OF NEW HAMPSHIRE

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        V.                          )   No. 09-Cr-30-02-GZS
                                    )
ELAINE BROWN                        )
_____)

**MOTION ON SENTENCING**

Counsel for defendant Elaine Brown respectfully moves for a guidelines departure from Criminal History Category (CHC) III to CHC II and for a non-guidelines sentence which includes 361 months in the custody of the Bureau of Prisons, consecutive to the sentence which was imposed on April 24, 2007 in United States v. Elaine Brown, D.N.H. 06-Cr-71-01-SM.  Grounds follow.

On July 9, 2009 the jury convicted defendant Elaine Brown of conspiracy to prevent officers of the United States from discharging their duties contrary to 18 U.S.C. § 372, as charged in Count One of the indictment;  of conspiracy to commit an offense against the United States contrary to 18 U.S.C. §§ 371 and 111(a) & (b), charged in Count Two; with carrying and possessing firearms and destructive devices in connection with a crime of violence contrary to 18 U.S.C. § 924(c)(1)(A) & (B), charged in Count Four; with being a felon in possession of a firearm contrary to 18 U.S.C. § 922(g)(1), charged in Count Six; with obstruction of justice contrary to 18 U.S.C. § 1503, charged in Count Eight; and with failure to appear for sentencing contrary to 18 U.S.C. § 3146, charged in Count Eleven.

Both the defendant and counsel have submitted objections to the Presentence

Investigation Report (PSR). They appear in Addendum I and Addendum II to the PSR. Pertinent responses to the PSR's description of the offense conduct will be addressed below.

### A. Guidelines Issues

The parties do not dispute that Counts One, Two, Six, Eight, and Eleven are grouped under U.S.S.G. § 3D1.2(c), that under § 3D1.3(a) the highest offense level among the counts determines the offense level for the group, and that under § 2K2.4(b) and 18 U.S.C. § 924(c) the mandatory sentence of 360 months must be consecutive to any other term of imprisonment. *PSR ¶ 52.* Since the grouped offenses occurred while the defendant was released under 18 U.S.C. § 3141 et seq., there must be an additional consecutive term of imprisonment under 18 U.S.C. § 3147. *PSR ¶ 115.* However, § 3147 is not among the statutes covered by the sentencing guidelines, see Guidelines Manual *Appendix A,* so that no guideline sentencing range (GSR) applies. The Court can therefore impose a sentence of any term up to ten years. As will be further discussed below, a consecutive, incremental sentence of one month would comport with 18 U.S.C. § 3553(a).

Count Six generates the highest offense level among the grouped counts. *PSR ¶¶ 52-87.* Counsel has examined the firearms and "large capacity" magazines upon which the government relies to generate a base offense level of **20** under U.S.S.G. § 2K2.1(a) (4)(B). *PSR ¶ 65.* Application Note 2 to § 2K2.1 defines a "large capacity magazine" as one which will accept more than 15 rounds of ammunition. Having examined magazines associated with firearms involved in this case, counsel does not object to the PSR's determination of the base offense level for Count Six. Since the conduct for which the defendant is accountable under U.S.S.G. § 1B1.3 involved between eight and twenty four firearms, there is an undisputed increase of **4**

levels under § 2K2.1(b)(1)(B).  *PSR 66.*  At least one of the firearms recovered from the Browns' home after their arrest had an obliterated serial number, adding **4** more levels.  *PSR 67.*  There are no victim-related or role in the offense adjustments. *PSR ¶¶ 68-69.*  Since the instant offenses occurred while the defendant was on release for the tax-related offenses, **3** more levels are added, *PSR ¶ 70.*  Thus there appears to be no principled ground to challenge the determination that the total offense level (TOL) for the grouped counts is **31**.  *PSR ¶ 89.*

The PSR determines that the defendant's 2007 conviction and sentence in this Court for tax related offenses generate three criminal history points, *PSR ¶ 92.*  Per U.S.S.G. § 4A1.1(d) two more points are added because the defendant was under that sentence when she committed the instant offenses.  *PSR ¶ 93.*  An additional third point is added per § 4A1.1(e) because she was on escape status.  *Id.*   The PSR correctly concludes that those 6 points place the defendant in CHC III.  However, CHC III substantially over-represents both the seriousness of the defendant's past criminal conduct and the likelihood that she will commit further crimes.   Per the PSR, when she was arrested for the tax offenses in 2006, she was a 65 year old women with no juvenile or adult criminal arrests, let alone convictions, not even for motor vehicle or other non-criminal violations.  *PSR ¶¶ 91-94.*  All of her six criminal history points arise out of the tax case and her conduct thereafter.   This defendant's criminal history more closely resembles that of defendants in CHC II.  Moreover, she presents a significantly lesser risk of recidivism than most defendants in CHC III.  Consider her age, her long years of productive and lawful behavior as a dentist who worked her way through Tufts Dental School, <u>see</u> *PSR ¶ 107,* and as a mother who, despite a difficult marriage and divorce, raised a son and a daughter who are now college educated, successful adults.  *PSR ¶ 99.*  The defendant has no history of the drug or alcohol abuse or

victimization which often underlie criminal conduct. She has no history of mental illness or emotional problems, other than anxiety attacks when she was released on bail and forbidden to reside with her husband Edward Brown. *PSR ¶ 104*. Finally, although in both this trial and in the tax-related trial, the defendant's arguments about the lawfulness of her conduct were rejected, it is clear that Elaine Brown acted on her firmly held convictions that she was behaving honorably in resisting unlawful tax collections and in defending herself and the marital home. Her offense conduct was not based on greed, anger or a desire to hurt or exploit anybody. For these reasons the Court should depart from CHC III to CHC II. *U.S.S.G. § 4A1.3(b)(1)*.

The GSR for TOL 31 and CHC II is **121 to 151 months**. Guidelines Manual *Ch.5 Pt. A*.

**B. The circumstances of the conduct of conviction and Elaine Brown's history support a Booker variance and a sentence which includes 361 months in the custody of the Bureau of Prisons, consecutive to the sentence which was imposed on April 24, 2007.**

United States Booker, 543 U.S. 220, 126 S. Ct. 738 (2005), Rita v. United States, – U. S. –, 127 S. Ct. 2456 (2007), Kimbrough v. United States, – U.S.– ,128 S. Ct. 558 (2007), Gall v. United States, – U.S.–, 128 S. Ct. 586 (2007), United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir.2006), *cert. denied* 127 S. Ct. 928 (2007), their progeny and 18 U.S.C. § 3253(a) require the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and to impose a sentence which is "sufficient but not greater than necessary" to comply with the enumerated purposes of sentencing. In United States v. Martin, 520 F.3rd 87 (1st Cir.2008), the Court of Appeals upheld a non-guideline sentence well below the GSR. Judge Selya wrote for the panel that post-Gall a sentencing court "should not consider itself constrained by the guidelines to the extent that there are sound, case- specific reasons for

4

deviating from them.  Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale." Martin, 520 F.3d 91.  Moreover, the Court may deviate from the GSR if it determines the applicable guideline does not fit the circumstances of the case before it.. Kimbrough 128 S. Ct. at 573-74.

A consecutive sentence of thirty years is a life sentence for this 68 year old defendant. A sentence of 361 months would comport with 18 U.S.C. § 3147 and would more than suffice to meet the criteria in 18 U.S.C. § 3553(a).

**1. The nature and circumstances of the offenses**

The nature and circumstances of the offenses of conviction are undeniably serious.  In the written instructions on Count Four as read to the jury (as noted by counsel) the Court directed the jury to consider whether the government had proven two elements beyond a reasonable doubt:

> First, that the defendant conspired to prevent officers of the United States from discharging their duties, as charged in Count One, or conspired to interfere with federal law enforcement officers in the discharge of their duties, as charged in Count Two of the indictment.
> Second, defendant knowingly carried or used a firearm including a destructive device during and in relation to, or possessed a firearm including a destructive device in furtherance of, the commission of that crime of violence.

As indicated in the jury verdict form, the jury convicted Elaine Brown of possessing a "destructive device," so that 18 U.S.C. § 924(c)(1)(B)(ii) mandates a thirty year sentence. However, the total "sentencing package," should  fairly and justly address the nature and characteristics of the defendant's actual criminal conduct.  See United States v. Genao-Sanchez, 525 F.3d 67, 71 (1st Cir.2008).

To convict the defendant of violating § 924(c)(1)(B)(ii), the jury was not required to find that she actually possessed destructive devices. Consistent with applicable law, the jury was

instructed that constructive possession sufficed. United States v. Scott, 564 F.3d 34, 39 (1st Cir.2009). Moreover, the jury was not required to find that Elaine Brown herself possessed one or more destructive devices. The jury was instructed that she would be criminally liable if a member of the conspiracy of which she was then a member violated § 924(c)(1)(B)(ii) and if she could have reasonably foreseen that one or more of her co-conspirators might commit that offense. Case law supports such vicarious criminal liability. United States v. Gonzales, 570 F.3d 16, 23, n.8 (1st Cir.2009). The government made effective use of this *Pinkerton* doctrine in its rebuttal of Elaine Brown's argument that, although she possessed a firearm, particularly the Glock recovered when she was arrested on October 7, 2007, she was not liable for the various destructive devices recovered from the Brown home. However, there is simply no evidence that she assembled or positioned any of the pipe bombs, spring guns, Tannerite devices, or black powder explosive devices. In their proffers or statements to law enforcement neither Daniel Riley nor Robert Wolffe, nor Jason Gerhard said that Elaine Brown was so involved. *PSR ¶ ¶ 14, 19, 19A, 23, 23A, 24, 30-32, 34-35.* Edward Brown testified at trial that she had nothing to do with the various destructive devices. There was no trial evidence to the contrary. Moreover, nobody suffered any injury as a result of any of the Browns' actions. Elaine Brown's conduct with regard to the destructive devices was notably less egregious than that of defendants who make active use of bombs or other destructive devices to perpetrate violent crimes. In sentencing her on Count Four, a statutory straight jacket constrains the Court from taking into account this defendant's actual conduct, but it does not constrain the Court from imposing a total sentence which comports with the "parsimony principle" in § 3553(a). But see United States v. Vidal-Reyes, 562 F.3d 43, 49, 52 (1st Cir.2009) (Dicta on sentencing for § 924(c) predicate

offenses).

That the defendant possessed a Glock pistol was undisputed at trial. The Court ruled that the evidence adduced at trial did not warrant an instruction on the defense of justification, but the Court can and should consider the mitigating circumstance that she obtained the Glock only after government agents fired at, tazered, and forcibly detained Daniel Riley during an intimidating show of force on June 7, 2007, leading her to conclude that she was at imminent risk of being forcibly removed from her home after being convicted of non-violent tax offenses.

The defendant's love and loyalty toward her husband caused her to return to their home in February of 2007, where she then engaged in the conduct for which she now stands convicted. She remained within the boundaries of the Plainfield property until October 7, 2007, when an undercover team arrested her and her husband peaceably and without injury to anyone. *PSR ¶ 37*. At no time during those eight months did the defendant, or anyone else with them, fire a shot in anger at anybody. The Brown's public statements about defending "to the death," *PSR ¶ 9*, were expressions of self-defense, indicating that they would respond only if fired upon. *Addendum I to PSR ¶ 7*. At no time did they initiate or threaten to initiate aggressive force against anyone. *Addendum I to PSR ¶ 6*. Notwithstanding the firearms and destructive devices recovered on the Plainfield property after the Browns' arrest, they never put government agents or anybody else at risk by discharging any device or firearm.

**2. The defendant's history and characteristics.**

The defendant is an intelligent, principled woman who has accomplished much good in her long life. She had a lower to middle class upbringing. *PSR ¶ 96*. Her mother, a mill worker, and her father, an HVAC repairman, were devoutly religious. *Id.* They sent her to a parochial

girls school, and she sang in the church choir until her early twenties. *Id.* She put herself through college with student loans. *PSR ¶ 97.* She studied dental hygiene and graduated with a Bachelor of Science degree in 1967. *PSR ¶ 107.* She worked for several years as a dental hygienist and then enrolled in dental school. *Id.* She obtained her Doctor of Dental Medicine from Tufts in 1976, when women dentists were less common than now. *Id.* She practiced dentistry until her arrest and incarceration in October of 2007. *PSR ¶ 110.* In 2000 she obtained a diploma as a Master Herbalist. *PSR ¶ 111.* An active member of the Holistic Dental Association, *PSR ¶ 108*, she appears to have been the only New Hampshire dental provider who practiced holistic methods. *PSR ¶ 111.* She was a competent, caring professional. One of her patients, Christine Arivizu, testified at trial that the defendant gave her excellent care.

      The defendant married her first husband while attending college. *PSR ¶ 99.* The marriage lasted 16 years. *Id.* She had two children, both of whom graduated from college and are successful and both of whom love and support their mother, although they do not share all her views. *Id.* It is evident from counsel's contacts with them that the defendant was an effective, caring parent.

      The defendant met Edward Brown in 1985. and they married in 1991. *PSR ¶ 100.* Their marriage remains strong and mutually supportive. *Id.*

      As already noted, the defendant had no arrests or convictions until her arrest for the tax charges in 2006, when she was 65. *PSR ¶ 92.* The numerous pro se pleadings filed in the tax case and in this case show that the defendant and her husband came to believe that there was no lawful basis for the federal government to tax a person's earned income, that in 1996 they ceased to pay taxes on their income after the Internal Revenue service refused to respond to their

repeated requests to show them the law which required them to do so, that the national government has been taken over by criminal elements which infringe citizens' constitutional rights, and that in Plainfield they faced the same unlawful government force as led to government orchestrated killings at Ruby Ridge, Idaho and Waco, Texas.  These beliefs may seem untenable to others.[1]  However, the defendant came to them honestly.  Her principles and her loyalty to her husband motivated her to engage in the conduct underlying the instant convictions.  Her actions were not motivated by greed, drug or alcohol addiction, mental illness, a desire to harm or exploit anyone, or the other typical causes of criminal conduct. There can be no denying that the defendant is a convicted felon, but she is exceptional.

It came as no surprise to counsel when earlier this week the shift captain at the local jail where the defendant has been held since February of 2009 confirmed that she has had no disciplinary write-ups.  She has been a model inmate.

**3. Conclusion**

The circumstances of the offense and the defendant's history and characteristics support the sentence sought herein.   It would be long enough to reflect the seriousness of the offense, promote respect for the law and provide just, incremental punishment for the offense conduct. Effectively a life sentence, it would adequately deter criminal conduct and protect the public from further crimes by the defendant.  She does not need educational or vocational training,

---

[1] There is ample authority that the federal government in general and the IRS in particular have the power to collect taxes based on personal income earned anywhere in the United States. See  Marranca v. United States IRS, 2009 U. S. Dist. LEXIS 27831, *15-27 (March 31, 2009, W.D.N.Y.) (Citing authorities).   A jury rejected the defendant's view that she was not obliged to pay a federal tax on her income. *PSR ¶ 5*.  This Court ruled as a matter of law that she was not entitled to an instruction on the defense of self-defense or justification.

medical care or other corrective treatment in a prison setting.  In short, a consecutive sentence totalling 361 months of imprisonment would comport with the criteria in § 3553(c).

The government opposes this motion.

No supporting memorandum accompanies this motion because it contains supporting authority.

WHEREFORE, it is respectfully moved that the Court grant said relief and such other and further relief as may be just.

|  |  |
|---|---|
|  | Respectfully submitted,<br>ELAINE BROWN<br>By Her Attorney, |
| Date: September 30, 2009 | /s/ Bjorn Lange<br>Bjorn Lange (NHBA: 1426)<br>Assistant Federal Public Defender<br>Federal Defender Office<br>22 Bridge Street<br>Concord, NH  03301<br>Tel. 603-226-7360<br>Bjorn_Lange@fd.org |

### CERTIFICATE OF SERVICE

I Bjorn Lange hereby certify that on September 30, 2009, a copy of the foregoing was sent via ECF to AUSA Terry L. Ollila, AUSA Arnold H. Huftalen, and Attorney Michael J. Iacopino and that copies will be e-mailed to DCUSPO Cathy A. Battistelli and hand-delivered to Elaine Brown.

/s/ Bjorn Lange