IN THE UNITED STATES OF AMERICA
DISTRICT COURT OF NEW HAMPSHIRE

Elaine Brown )
   Petitioner )
    )
    )
v. )   Case No. 09-cr-30-02-GZS
    )
    )
United States of America )
   Repondent )

********************************************************************

MOTION TO VACATE SENTENCE IN LIGHT OF FED.C. RULE 52(b)

********************************************************************

COMES NOW Elaine Brown, Petitioner, pro se, respectfully requesting this Honorable Court reconsider petitioner's sentence in light of Rule 52(b). The petitioner claims a plain error so egregious that it affects her substantial right, whereas, the integrity and fairness of the trial proceedings fall short.

Petitioner not only should have been evaluated for her mental capacity, but also for her physical capacity, considering the circumstances around the conviction and the height of the events that occurred.

In U.S. v. Miranda (1972, CA2 NY) 437 F. 2nd 1255, movant raised detailed and controverted issues of fact, such as petitioner in the this case warranting a hearing. There is also no evidence of a hearing to address the issue of diminished capacity or physical capacity at any stange of the judicial process including post conviction relief, even though stand-by counsel requested such. It seems appropriate that the federal court should grant such a hearing at this time. Owsley v. Cunningham (1961 Ed. VA) 190 F. Supp. 608.

### Procedural History

On 1/21/09, the Government returned a sealed indictment charging Petitioner

with Count One (1), 18 USC§372; Count Two(2), 18 USC§371 and 111(a)&(b); Count Four (4), 18 USC§924(c)(1)(A)(i)&(ii) and 924(c)(1)(B)(ii); Count Six (6), 18 USC§922(g)(1) and 914(a)(2); Count Eight (8), 18 USC§1503; and Count Eleven (11) 18 USC§3416(a)(1)&(b)(1)(A)(ii).

Initial appearance and arraignment for Petitioner was held 2/19/09, where a plea of not guilty was entered and ;the matter was set for trial. Trial commenced 6/30/09, and Petitioner was found guilty on Counts 1,2,4,6,8,11. Brown (02) was sentenced to a term of imprisonment of 420 months followed by 3 years supervised released. A Direct Appeal was filed and the U.S. Court of Appeals confirmed the conviction.

The Petitioner would first like to address the interpretation of the federal statute that prohibits using a firearm during and in relation to a "crime of violence" 18 USC§924(c)(1)(A).

Section §924(c)(1)(A) set out a mandatory minimum for "any person who, during and in relation to any crimeof violence or drug trafficking... <u>uses or carries</u> a firearm, or who, in furtherance of any such crime, <u>possesses a firearm</u>."

In this particular case the Petitioner's mere presence in the home or proximity to the alleged crime of violence does not by itself demonstrate that she should have been found guilty under 924(c)(1)(A) or 924(c)(1)(B), as she did not use or carry a firearm, nor did she in <u>furtherance</u> of any such crime, possesss a firearm.

With respect to the United States Supreme Court's determination concerning 18 USC§(c)(1), which imposes, in addition to any punishment for the predicate offense, a mandatory 5-year sentence, and a 30-year sentence consecutive sentence upon a person who uses or carries a firearm during and in relation to a crime of violence - that "use" is limited to active employment of a firearm, and "carries" applies to a person who knowingly possesses a firearm in furtherance of a crime.

The terms "use" and "carry" retain independant meanings as (1) use of a gun

2

involves to the displaying, bartering, striking with, firing or attempting to fire a firearm; (2) carrying a gun does not necessarily involve the gun's active employment, but carrying of a firearm on the person, or in a vehicle, or locked glove compartment or trunk of a car, which a person accompanies.

Brown could not have "actively employed a firearm at any time because she was unable to stabilize a firearm in her hand, due to the fact that her left wrist was broken, and she was in pain. She would not have been able to withstand the weight of the weapon because of weakness, less of use, and extreme pain which any pressure on it would produce. (EXHIBIT 1). However, the indictment (EXHIBIT 2) states (Pg ID11,kk):

> On or about October 4, 2007, defendant, Elaine Brown, held an assault rifle while in the presence of undercover Deputy US Marshals.

The aforementioned assault rifle was held by Mr. Brown, not by Petitioner, as she could not have held it.

The Petitioner left the home as the court ordered, and stayed with her son on or around January 8 to February 20, 2007. During that time she maintained phone contact with her husband/co-defendant. This was a time of great emotional upheaval for Mrs. Brown. She was torn between loyalty to her husband and obedience to the judge's order to remain away from her home. Mr. Brown made repeated attempts for Mrs. Brown to join him, at one point telling her she was a coward, and he would "see you on the other side." These repeated outbursts led her to seek a physician's care for panic attacks she was now experiencing.

The decision she made to return to her husband was, in retrospect, not the wisest one, but the only one she felt she could make under the circumstances.

At the time she returned, Mr. Brown was alone in the house, <u>with no weapons</u>. However, with time, many people came of their own will, none were solicited or invited. It wasn't until after June 7, when Danny Riley was fired upon by US Marshals, did weapons come in, and Petitioner later discovered what was developing. She had no prior knowledge, no control, no proprietary role; she did not approve or participate. In fact, Petitioner regrets her contact with her husband so that he could threaten, intimidate and coerce her back into the home. It is no doubt that Mr. Brown exerted, intentionally, pressure to make Petitioner fearful or apprehensive, and he used that moral pressure to constrain her to things against her will, things that she otherwise would not do. <u>Brown v. Sweeney, 526 F. Supp.2d 126, 134 (D. Mass. 2007)</u>. Mrs. Brown was an outstanding citizen who had always given to the community. Her accomplishments include:

> Mrs. Brown educated herself as a dental hygienist, then ten years later, at the age of 32, applied to and was accepted at Tufts Dental School in Boston. She built a successful dental practice in Massachusetts, later moved to New Hampshire, where in 1992, she again built a successful practice in Lebanon, NH. In 2000, Mrs. Brown obtained her master herbalist certification from The School of Natural Healing in Utah, concluding two years of home study and a week in Utah of lectures and testing. She then opened an herb shop in her office building, which also held workshops on natural health and healing. Dr. Brown also applied her knowledge of herbal remedies in her practice when she could, given the limited opportunities of her profession. She was always concerned with the health of her patients, and was one of the first dentists to cease the use of mercury fillings in her patients' teeth, in 1997.

The prosecution in United States v. Brown 09-cr-30-GZS, could not prove beyond a reasonable doubt either actual or constructive possession. Actual possession occurs when an individual "knowingly has direct physical control over an object or thing." Constructive possession has consistently been defined as "when a person knowingly has the power and intention at a given time to exercise dominion over an object either directly or through others." <u>United States v. McLean 409 F.3d 501 (1st Cir. 2005)</u>. See also United States v. Nieves-Burgos 62 F.3d 431, 437, 438 (1st Cir. 1995); United States v. Garcia 983 F.2d 1160, 1164

4

(1st Cir. 1993).  Constructive possession "can be established through circumstantial evidence, though <u>mere possession</u> or <u>association</u> with another who possessed contraband (in this case the firearms) is insufficient.  United States v. DeCologero 530 F.3d 36, 67 (1st Cir. 2008).

Constructive possession is shown if defendant knowingly had the power and intention to exercise "dominion and control over a firearm directly or through others," United States v. Sanchez-Badillo, 540 F.3d 24, 21 (1St. Cir. 2008). Instead, the Government must show "some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it."  See <u>United States v. McLean 409 F.3d 492, 501 (1st Cir. 2005.)</u>

In this case, it cannot be found that the Petitioner had direct control because she did not have the physical capacity to handle a firearm, nor did she have the power, intention, or knowledge of operation, because it is now clear that Mr. Brown maintained the power throughout the entire ordeal, and coerced Mrs. Brown into staying in the home.  When she returned to her home there was no evidence of weapons, nor at the time that she gained knowledge of her co-defendant's intentions, was there time to withdraw.  Rosemond v. United States (12-895 3/5/14).

It can be said that while the marshals were outside of the home fearful as to the unexpected, Mrs. Brown was inside the home equally fearful and could not influence her husband to refrain from acquiring weapons or to surrender.

Therefore, based on new evidence, and the aforementioned facts, a rational jury would not be able to find Mrs. Brown guilty beyond a reasonable doubt.  The following inferences could not have been drawn:
   1) That Petitioner had knowledge of the firearms and ammunitions that were

5

being brought into the home.

2) That Petitioner had the power to exercise dominion and control over the firearms and ammunitions.

3) That Petitioner had the intention of exerting dominion and control over the firearms and ammunition if needed.

4) That Petitioner did use or carry a firearm.

5) That Petitioner had time or opportunity to withdraw, and

6) That Petitioner possessed a firearm in furtherance of a violent crime.

Additionally, the Petitioner would like to put before this Honorable Court that under 18 USC§3661 "no limitation" can be placed on a sentencing court's power to consider the defendant's background, character, and conduct." Petitioner has stated she was always considered to be an outstanding citizen. She was 68 at the time of sentencing. She will be 101 when her sentence is complete. It questions whether this significant sentence would serve the goals of sentencing. This prison term will very well outlive the Petitioner. It is nothing short of life imprisonment. She would ask this Court to consider her history, characteristics, as well as her rehabilitation over the past 7 years in FBOP custody. Just as Mrs. Brown was an outstanding citizen, she has been an outstanding inmate.(EXHIBIT 3). She has availed herself of FBOP programming. (EXHIBIT 4). The Petitioner is an exemplary candidate for a reduction in sentencing, and would ask the Court to take into consideration reducing her sentence pursuant to Pepper v. United States 88 CrL (US 2011), and §3553(a)(1)(2)(A)(B)(C). The parsimony provision requires that a sentence be sufficient, but not greater than necessary. When the Court takes into consideration Specific Offender Characteristics, such as age 5H1.1, Education and Vocational Skills 5H1.2, and Physical Condition 5H1.4, along with studies that show the decreased rate of recidivism in the elderly, home detention may

be as efficient as, and less costly than, imprisonment. Further, Mrs. Brown has apologized publicly (EXHIBIT 5), and the community has received it well. She has also apologized to the Court.

In conclusion, the Petitioner felt trapped. Affidavits from her family (EXHIBITS 6, 7, 8) will show that because of Mr. Brown's intimidation that enhanced her fear of being disloyal, she was coerced into staying in a bad situation. The truth is she wanted out but feared repercussions. Mrs. Brown was working hard to provide for her family, while Mr. Brown sat at home and was of little help. The Petitioner is actually innocent of Count 4, and is only guilty of making a bad decision in men. This sentence is a death sentence as her health is declining and she is receiving inadequate health care. Now at age 74 the Petitioner feels her self weakening, and humbly asks the Court to review her sentence in light of hte aforementioned reasons.

Respectfully submitted,

_____        _3/28/15_____
Elaine Brown                       Date
Petitioner, pro se

CERTIFICATE OF SERVICE

This certifies that I, Elaine Brown, have sent by First Class US Mail, two copies of this document to the District Court of New Hampshire, 55 Pleasant St., Concord, NH 03301 on this date.

_____        Date   _3/28/15_____
Elaine Brown